# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| 1) **BJORN MYKLATUN,** an individual residing in Oslo, Norway, and <br> 2) **OIL INNOVATION, AS,** a Norwegian Company, <br><br> Plaintiffs, <br><br> vs. <br><br> 1) **HALLIBURTON ENERGY SERVICES, INC.,** a Foreign Corporation, <br> 2) **FLOTEK INDUSTRIES, INC.,** a Delaware Corporation, <br> 3) **CHEMICAL AND EQUIPMENT SPECIALTIES, INC.,** an Oklahoma Corporation, <br> 4) **JERRY D. DUMAS, SR.,** an individual residing in Houston, Texas, and <br> 5) **JOHN TODD SANNER,** an individual residing in Duncan, Oklahoma, <br><br> Defendants. | **Case No.** CIV-09-770-F <br><br> **Judge** |

## COMPLAINT

**COME NOW** the Plaintiffs, and for their causes of action against the Defendants, allege and state:

## PARTIES

1) The Plaintiff, Bjorn Myklatun, (hereinafter "Myklatun"), is an individual who

resides in Oslo, Norway.

2)	The Plaintiff, Oil Innovation, AS, (hereinafter "Oil"), is a Norwegian Company.

3)	The Defendant, Halliburton Energy Services, Inc., (hereinafter "Halliburton"), is a Foreign Corporation, with its principle place of business in Houston, Texas.

4)	The Defendant, Flotek Industries, Inc., (hereinafter "Flotek"), is a Delaware Corporation, with its principle place of business in Houston, Texas.  Flotek is, to the best of Plaintiffs information and belief, the parent corporation of Defendant, Chemical and Equipment Specialties, Inc.

5)	The Defendant, Chemical and Equipment Specialties, Inc., (hereinafter "CESI"), is an Oklahoma Corporation, with its principal place of business in Marlow, Oklahoma.

6)	The Defendant, Jerry D. Dumas, Sr., (hereinafter "Dumas"), is an individual, who, to the best of Plaintiffs' information and belief, lives in Houston, Texas.  During all relevant times, Dumas was acting as the President, Chief Executive Officer and Chairman of the Board of Flotek, both within and without the scope of his authority.

7)	The Defendant, John Todd Sanner, (hereinafter "Sanner"), is an individual, who, to the best of Plaintiffs' information and belief, lives in Duncan, Oklahoma.  During all relevant times, Sanner was acting as the President of CESI, both within and without the scope of his authority.

**JURISDICTION**

8)	This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this suit

involves a controversy between Parties of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys fees.

## VENUE

9) The Causes of Actions described herein substantially arose in Duncan, Oklahoma. Venue is appropriate in this Court as all of the Defendants have done business in Oklahoma, and specifically within this Judicial District, and have subjected themselves through at least minimum contacts to the Courts of Oklahoma within this District.

## FACTUAL ALLEGATIONS

10) On December 24, 2004, Plaintiff, Myklatun, and Defendant, CESI, entered into a distributor agreement, which made Myklatun the exclusive distributor for certain chemical microemulsion additives, that were manufactured by CESI to be used in the offshore oil drilling industry. The particular additive which is central to this case is known as "MAD-4." Additonally, Plaintiffs' contract covers numerous other microemulsion additive products.

11) The contractual agreement covered the territories of Norway, Denmark and their continental shelves and sales to Norwegian companies working outside of Norway. The agreement also covered all sales of the micoremulsion products, including sales outside the territory, that were to be used within the territory. The agreement has no specific termination date, but states that "if no progress is achieved after two years the agreement will be reviewed and extended for one year if the Parties agree."

12)     During March of 2005, Myklatun and CESI executed an amendment to the distributor agreement (hereinafter "Myklatun Agreement").  The amendment stated that "if no public approval is achieved or imminent after two years, the Parties have the right to terminate the contract with three months notice to the other Party".  If public approval was "granted within the first two years, or imminent shortly, the agreement would be extended for five years from the date of public approval."  Shortly after the Amendment, Myklatun organized Oil, and transferred his rights and obligations under the Distributor Agreement to Oil.  Myklatun is President of Oil Innovations, AS, and controls at least fifty percent of the shareholding and voting power of Oil Innovation, AS.

13)     During 2005 and the first few months of 2006, Myklatun, working in close coordination and conjunction with Dr. Glenn Penny (hereinafter "Penny"), President of CESI at that time, spent considerable time and monies obtaining the requisite testing and classification of MAD-4, pursuant to the policies and procedures of the applicable Norwegian laws and regulations.  Due to the efforts of Myklatun and Penny, MAD-4 has been classified as a chemical product that meets with the acceptance criteria for use and discharge into the Norwegian Sector of the Continental Shelf by operators which have a permit to discharge such chemical products. Prior to Myklatun's agreement with CESI, MAD-4 could not be used in the Norwegian Sector of the Continental Shelf, because it had not been tested nor classified for such use in accordance with the applicable Norwegian policies and procedures; and CESI could not afford to pay the costs associated

with the testing.  In addition to obtaining the requisite testing and classification of MAD-4, both Myklatun and Penny spent considerable time and monies promoting the virtues of MAD-4 to numerous companies operating in the oil and gas industry; including but not limited to the Defendant, Halliburton, and/or its subsidiaries.

14)     On or about May of 2006, it became clear to CESI that Myklatun's efforts in obtaining the requisite testing and classification of MAD-4, as well as promoting the virtues of the product  were proving successful.  However, CESI, which by then was determined to avoid its contractual obligations with Myklatun, began to manufacture and test other microemulsion products in efforts to bypass CESI's obligation with Myklatun, including a microemulsion product named GasPerm-1000, which was eventually sold to Halliburton for use as Halliburton's own proprietary product.   At the same time, CESI continued to work closely with Myklatun in marketing, testing,  and promoting MAD-4 to numerous other oil and gas companies.

15)     On September 11, 2006, CESI entered into a "Master Purchase Agreement" with Defendant, Halliburton.  The terms of the Master Purchase Agreement, with regard to sales of microemulsion products for use in the Territory covered by the Myklatun Agreement, directly violate the terms of Myklatun's exclusive distributorship agreement.

16)     On October 11, 2006, two months before the expiration of the two year period contained within the original distributor agreement, CESI provided written communication to Myklatun to the effect that it wished to terminate the agreement.  This

termination letter stated that CESI did not wish to renew the agreement because "no products has been purchased pursuant to the agreement." However, CESI, unbeknownst to Mylkatun, had been pursuing ongoing discussions with Halliburton to promote the use of GasPerm-1000 microemulsion products in the North Sea. Both Halliburton and CESI were fully aware of the Myklatun Agreement, and actively conspired to conceal the use of microemulsion products in the North Sea from the Plaintiffs.

17) On October 25, 2006, Myklatun responded to CESI, stating that the amended agreement ran for a period of five years after public approval of the CESI products at issue and that public approval was obtained on June 20, 2006, in Norway, and on August 3, 2006, in Denmark.

18) On October 27, 2006, CESI replied that it considered the original distributor agreement and any subsequent amendments invalid on the grounds that the signor of the agreement, CESI President, Dr. Glenn Penny, allegedly did not have corporate authority to bind CESI. This allegation is patently frivolous and was not made by CESI in good faith. Thereafter, Flotek and/or CESI reassigned Dr. Penny in order to facilitate the tortious conduct of the Defendants, as described herein.

19) On December 21, 2006, CESI filed a Petition for Declaratory Judgment in the District Court of Stephens County, Oklahoma, wherein CESI has asked the District Court to determine whether Myklatun had gained the "public approval", which was required under the amended distributor agreement, in order to support the extended contract term.

That litigation is pending. However, for the first time on or about July 27, 2007, the Plaintiffs began to learn about the various tortious and/or fraudulent actions of the Defendants, which are more particularly described herein.

## CAUSES OF ACTION

### TORTIOUS INTERFERENCE WITH CONTRACT

20) Plaintiffs, Myklatun and Oil, had a contract with CESI, including an amendment thereto, within which they agreed to specific terms as previously described herein. However, the Defendants, Halliburton, Flotek, Dumas and Sanner, intentionally and wrongfully interfered with this contract. As a result, the Defendant, CESI, unilaterally terminated the contract and the Plaintiffs suffered substantial damages. The Defendants, Halliburton, Flotek, Dumas and Sanner, knew or under the circumstances reasonably should have known about the Plaintiffs' contract, yet they interfered with the contract and induced CESI to terminate the contract. These Defendants used improper and unfair means to intentionally interfere with the contract, as a result of which the Plaintiffs suffered damages. This intentional interference by the Defendants was malicious, wrongful and was neither justified, privileged nor excusable.

### FRAUD

21) The Defendants, Halliburton, Flotek, CESI, Dumas and Sanner, committed a fraud upon the Plaintiffs, both prior to and after the execution of the contractual agreement and amendment to the agreement at issue; by willfully and knowingly allowing the Plaintiffs

to incur significant time and expense during the completion of their contract, when these Defendants eventually determined that CESI would not comply with the contract under false premises in order that Flotek and CESI could cater to their major client, Halliburton, with whom they had just entered into a Master Purchase Agreement. Additionally, Defendants, Halliburton, CESI, Flotek, Dumas, and Sanner, engaged in further fraudulent conduct by devising and developing the microemulsion product GasPerm-1000, in a blatant attempt to circumvent Plaintiffs' contract with CESI. All of this conduct was concealed to the Plaintiffs with the intent by these Defendants to deceive Plaintiffs and with reckless disregard for the damages that the Defendants caused.

## CIVIL CONSPIRACY

22) The Defendants wrongfully conspired to commit the torts described herein through willful, wanton and intentional conduct, as a result of which the Plaintiffs suffered damages.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs seek actual damages against the Defendants in an amount in excess of seventy-five thousand dollars ($75,000), exclusive of interest, costs and attorney fees, and punitive damages against the Defendants in an amount in excess of seventy-five thousand dollars ($75,000), exclusive of interest, costs and attorney fees, along with interest, costs, attorney fees and any further relief that the Court deems just.

Respectfully Submitted,

 s/ Gary L. Richardson

Gary L. Richardson, OBA # 7547
Charles L. Richardson, OBA # 13388
Paul T. Boudreaux, OBA # 990
**RICHARDSON RICHARDSON BOUDREAUX**
6450 South Lewis Avenue, Suite 300
Tulsa, Oklahoma 74136
(918) 492-7674 / (918) 493-1925 *fax*

&

James L. Kee, OBA # 4902
Jeffery K. Archer, OBA # 16105
**KEE & ARCHER, P.A.**
1102 Maple
P.O. Box 1646
Duncan, Oklahoma 73534
(580) 252-2120 / (580) 252-8657 *fax*
*Attorneys for Plaintiffs*

*ATTORNEYS' LIEN CLAIMED*
*JURY TRIAL DEMANDED*